**EXHIBIT "A"**
**AFFIDAVIT IN SUPPORT OF APPLICATION**

I, Jason R. Carter, a Task Force Officer (TFO) of the United States Drug Enforcement Administration (DEA), being duly sworn, do depose and state that:

1. I am employed as a TFO with the DEA, assigned to the Springfield, Missouri, Resident Office. As such, I am an investigative and federal law enforcement officer of the United States of America, authorized to conduct investigations of, and to make arrests and seizures for, offenses enumerated in the Controlled Substances Act, Title 21, United States Code.

2. I have been a sworn law enforcement officer for over seven years. I have received specialized training relating to the manufacture, distribution, and possession with intent to distribute controlled substances. From my training and experience, I have extensive knowledge of complex illegal drug manufacturing and distribution operations.

3. I submit this affidavit in support of the attached application for an order authorizing the tracking of cellular telephones (417) 693-8648, (402) 730-6170, (417) 920-6416, and (417) 493-8242, to include GPS location, cell-site location information, triangulation, and the disclosure of location-based data. I set forth the following facts showing that there are sufficient grounds to believe that the GPS location, cell-site and other subscriber records, and information pertaining to telephone number (417) 693-8648 (hereinafter SIMCOE's Telephone), (402) 730-6170 (hereinafter DELONG's Telephone), (417) 920-6416 (hereinafter EVANS' Telephone), and (417) 493-8242 (hereinafter CASSIDY's Telephone) will likely be relevant and material to an ongoing criminal investigation.

4. The information contained in this affidavit is based upon my personal knowledge and investigation, as well as information provided to me by other law enforcement agents involved

in the investigation of this case. This affidavit contains the facts necessary to establish probable cause to track the above listed telephones. Not all of the facts known to me about this investigation have been included.

5. My investigation has shown that William JONES, Darell DELONG, Alan CASSIDY, William SIMCOE, and Kyle EVANS are members of a prison gang in the Southwest Missouri area called the Southwest Honkeys. The Southwest Honkeys have a structure with ranks for members, bylaws of the group have been recovered in past warrant executions by SPD, and each member has a "patch" or tattoo, which is often referred to as a "spinner" because of its spinning swastika appearance, and members often have tattoos that read "S.W. Honkey." The Springfield, Missouri, Police Department (SPD) and the Missouri Department of Corrections (MDOC) keep records of the members of this organization, based on determinations made using a point system where individuals receive points for things such as admitting membership (9 points), being arrested with another confirmed member (9 points), having a gang tattoo (8 points), being confirmed by another law enforcement gang unit (8 points), identified by a reliable informant (8 points), being identified by another gang member (8 points), using gang symbols (4 points), admitting to knowledge of gang activity or being in possession of gang documents (4 points), and other activities (2 points). If an individual receives at least 10 points, that person is considered a documented member of the gang. If I have noted below that a individual or other person is a documented member of the Southwest Honkeys, that information was obtained from those records.

6. The Southwest Honkeys engage in many kinds of criminal activity, but this investigation has shown that one of their primary criminal activities as a group is the distribution of controlled substances, primarily methamphetamine. I have obtained this information by listening to

prison calls between JONES and other incarcerated Southwest Honkeys. JONES is a member of the Southwest Honkeys prison gang, as documented by the MDOC and SPD and JONES has also been identified as a leader in the methamphetamine-related activities of the Southwest Honkeys.

7. Previously, in October of 2016, I had identified (417) 496-0575 as JONES' Telephone (hereinafter JONES' Telephone) through a Facebook search that showed that number as related to JONES' Facebook profile. A recent example of the prison calls I have monitored occured on August 2, 2017, at 1:27 p.m. On that date, an MDOC inmate named Richard BUCKNER contacted JONES' Telephone from his MDOC account. During the recorded prison conversation, BUCKNER and JONES used vague and coded language. That conversation went as follows:

| | |
|---|---|
| BUCKNER: | "I need to holler at you about something. You know what I'm saying?" |
| JONES: | "What's up?" |
| BUCKNER: | "I'm trying to figure out how to word this. You know what I'm saying?" |
| JONES: | "Just have her call me." |
| BUCKNER: | "Okay. Bet. Like, uh, I already got, uh, my end already covered. Know what I'm saying? So it's not like." |
| JONES: | "Just have her call me." |
| BUCKNER: | "Okay. Cool, cool, cool. I need it Saturday though." |
| JONES: | "Just have her call me." |
| BUCKNER: | "Okay. Bet. Like…" |
| JONES: | "Alright. Send me a message or something." |

8. I believe both individuals were trying to use vague and coded language because BUCKNER started that portion of the conversation by saying, "I'm trying to figure out how to word this," and JONES repeatedly told BUCKNER, "Just have her call me." I believe JONES was trying to keep any details out of their vague and coded conversation. However, based on my training and experience and my investigation as outlined above, I believe BUCKNER was attempting

to obtain methamphetamine from JONES for a drug deal he already had set up. I also believe JONES and BUCKNER had done this in the past as JONES already knew to have the unidentified female contact him to work out details on an unrecorded line.

9. On August 6, 2017, at 12:03 p.m., BUCKNER contacted JONES again on JONES' Telephone. That conversation went as follows:

> BUCKNER: "If anybody says that, uh, calls you for me, let me know. Cause I didn't. Okay?"
> JONES: "Why haven't they?"
> BUCKNER: "Man, it's kind of a long story. Like, um, it's kind of like a dead issue right now, just for a little bit. Well, we had a little bit of, fuckin' uh, differences on some of the money. You know what I mean? On the amounts and shit. You know what I'm saying?"
> JONES: "Alright."
> BUCKNER: "So I clipped 'em."

10. Based on my training and experience, I believe the drug deal they set up on August 2, 2017, had fallen through because BUCKNER and the unknown party were unable to come to an agreement on drug prices and amounts. Because they could not agree, BUCKNER refused to do the deal ("I clipped 'em."). BUCKNER was also telling JONES to refuse to deal with anyone claiming they had been sent by BUCKNER, which was evident by the statement, "If anybody says that, uh, calls you for me, let me know. Cause I didn't. Okay?" BUCKNER was telling JONES he was not "vouching" for the other party he had just "clipped."

11. Members also obtain sources and then use other members or associates to distribute methamphetamine for them. The investigation has also shown that higher ranking members can vouch for lowing ranking members, allowing the lower ranking member to gain access to methamphetamine distribution through the gang and the income that comes along with it.

12. My investigation has uncovered that SIMCOE's Telephone is a Sprint Corporation cellular telephone number registered to William SIMCOE at his residence, 701 East Smith Street,

4

Springfield, Missouri. A Facebook search of that number also revealed it is associated with a profile bearing SIMCOE's name. That Facebook profile is listed as a "Facebook Friend" of JONES and other known Southwest Honkey gang members.

13. My investigation has uncovered that DELONG's Telephone is a Sprint Corporation cellular telephone in the name of Darrell DELONG. A Facebook search of that number also revealed it is associated with a profile bearing DELONG's name. That Facebook profile is listed as a "Facebook Friend" of JONES and other known Southwest Honkey gang members.

14. My investigation has revealed that EVANS' Telephone is an AT&T Wireless Corporation cellular telephone. An administrative subpoena for that phone revealed it is registered to "Ricky Evans" with an address of 1019½ West Lynn Street, Springfield, Missouri. EVANS' middle name is Richard, and he uses a nickname of "Ricky." A past Springfield, Missouri Police Department (SPD) report from June 2017 listed that address as the residence of EVANS. Lastly, I was able to conduct a Facebook search of that number, and found it was associated with a Facebook profile page bearing EVANS' name.

15. My investigation has revealed CASSIDY's Telephone is a T-Mobile/Metro PCS cellular telephone with an unknown registered user. A Facebook search of that phone number revealed it is associated with a Facebook account bearing Alan CASSIDY's name and photo. I have compared photos from that Facebook profile to jail booking photos of CASSIDY, and found they appear to be the same male. CASSIDY is a documented member of the Southwest Honkeys prison gang, and the Facebook photos and posts on CASSIDY's Facebook page show he is clearly affiliated with them as well. His "employer" listing on Facebook reads, "Honky Stomp Down," indicating he may act as an enforcer for the gang.

16. On August 11, 2017, U.S. District Judge Doug Harpool signed an order authorizing the interception of any wire and electronic communications to and from JONES' Telephone.

17. While monitoring JONES' Telephone, agents intercepted a call to JONES' Telephone from EVANS' Telephone that occurred on August 14, 2017, at 7:51 p.m. During that call, EVANS asked if JONES was with SIMCOE. EVANS then told JONES he needed to speak to him about something, but did not want to have the conversation on the phone. JONES asked EVANS where he was, and EVANS said he was at his mother's house. EVANS told JONES he was trying to get in touch with SIMCOE, but SIMCOE was not answering his phone. JONES asked EVANS if he had spoken to CASSIDY. EVANS told JONES that CASSIDY was with him at that time.

18. The conversation continued, and EVANS asked JONES if he was aware of "all the rumors about the old secretary." JONES stated he had, and EVANS told him, "Well, we got her." EVANS told JONES he had previously discussed "it" with SIMCOE, but did not want to "do the ol' Kyle thing and go overboard," so he was looking for further guidance from JONES or SIMCOE. EVANS told JONES everything was fine at that time and everyone was "chill and relaxed."

19. Previously, during monitored prison calls, I had heard JONES give out a number I was later able to determine was the number of the "Southwest Honey" or "secretary." Early in my investigation, JONES told incarcerated members to contact "Carolyn" at that number and, at that time, was associated with a Facebook profile in Carolyn Carpenter's name. In later calls, I determined Carpenter had been removed from that position when JONES learned she was dating a male named Jerry Earls. Earls was a member of the Family Values prison gang, a

6

rival of the Southwest Honkeys. JONES confronted Carpenter about dating a member of a rival gang and stripped her of her secretarial position.

20. During the same intercepted conversation on August 14, 2017, that began at 7:51 p.m., EVANS told JONES he had heard rumors that Earls had recently fled from police in a vehicle, ramming a police car in the process. EVANS then told JONES that Carpenter had been interviewed by police about the incident and had told them the male that fled had been her younger brother. EVANS told JONES he was concerned about Carpenter's willingness to speak with the police, and said, "That chick knows a lot about us (Southwest Honkeys), homie." JONES agreed with EVANS' concerns.

21. JONES then asked EVANS where Earls was at that time. EVANS told him he knew Earls was at another location helping someone move. EVANS speculated Earls knew Carpenter was with EVANS, and he would arrive there when he was finished helping the other individual move. EVANS told JONES he planned to "move the whole show somewhere else," or to just "snatch him (Earls) up, too." EVANS asked JONES for guidance, and JONES asked him where DELONG was at that time. EVANS told JONES that DELONG was there as well. JONES instructed EVANS to have CASSIDY go to SIMCOE's location and contact him. JONES also told EVANS to contact him if anything further was to happen, and he would respond to their location. EVANS responded by saying he had control of the situation, he just didn't think he should "take her into my mom's laundry room and beat her."

22. EVANS told JONES that if they believe Carpenter spoke to the police, "It is what it is." He stated they "just needed to decide if they believe the rumors were true or not."

23. Agents attempted to intervene in the planned assault by locating the individuals involved by conducting surveillance on all known addresses for SIMCOE and EVANS' mother, Thenia

Evans. After checking all known locations for EVANS and SIMCOE, agents were not able to locate the involved parties.

24. On August 15, 2017, at 9:35 a.m., agents intercepted another phone call to JONES' Telephone. During that call, SIMCOE called JONES and discussed the events from the previous night. JONES asked SIMCOE what happened, and he said that "Kyle" (EVANS) and his "ol' lady" (EVANS' unknown girlfriend) had "beat the shit out of her" (Carpenter). SIMCOE told JONES he had "diverted it and cleaned it up." He told JONES he got EVANS out of the house, and had DELONG and CASSIDY take "her" to a "safe place."

25. Their conversation continued, and they discussed EVANS running around "unleashed." SIMCOE told JONES he had tried to mentor EVANS on multiple occasions, but had apparently been unsuccessful. They agreed he was "out of control," and discussed getting him out of the Springfield area in order to prevent him from drawing unwanted attention from law enforcement. Based on my investigation and knowledge of the gang, I believe that EVANS assaulted Carpenter in an attempt to increase his standing within the gang and to attempt to protect the others and their activities from the threat he thought Carpenter was to them.

26. SIMCOE asked JONES if Carpenter knew where EVANS had been staying, and if she would attempt to contact the police in reference to the assault. JONES stated he did not think she would do so. Earlier in the conversation, SIMCOE and JONES had discussed that one of them needed to go talk to Carpenter about not talking to the police.

27. On August 15, 2017, at 1:34 p.m., CASSIDY called JONES' Telephone and they discussed EVANS. CASSIDY told JONES that EVANS felt like EVANS did what he was instructed to do and now he was being punished for it because they wanted him to leave town. JONES said,

8

"Nobody is being punished. He just needs to get out of Springfield so he doesn't go back to prison."

28. On August 15, 2017, at 3:36 p.m., JONES called DELONG and asked him how he was feeling. DELONG said he was "irritated and frustrated" and said that "last night was a roller coaster." DELONG said he "didn't know it was going to go that way, but he was ready for it." DELONG said he did not want to talk about it on the phone, but wanted to talk to JONES face-to-face.

29. In the short amount of time agents have monitored communications to and from JONES' Telephone, SIMCOE, EVANS, DELONG, and CASSIDY have contacted JONES multiple times confirming the above listed numbers are being utilized by their respective subjects.

30. Based on the above investigation, there is probable cause to believe that JONES, SIMCOE, EVANS, DELONG, CASSIDY, and others, known and unknown, are involved in the ongoing commission of violations of in connection with possible violations of Title 21, United States Code, Sections 846 and 841(a)(1), that is, conspiracy to distribute controlled substances, possession with the intent to distribute controlled substances, and/or distribution of controlled substances; and Title 18, United States Code, Sections 1961, 1962(c), and 1959, that is, racketeering activity and violent crime in aid of racketeering activity, specifically drug distribution, and Title 18, United States Code, Section 1512, that is, witness tampering, and that they and/or others known and unknown are utilizing SIMCOE's Telephone, DELONG's Telephone, EVANS' Telephone, CASSIDY's Telephone to facilitate that activity.

31. In my experience, the general location of SIMCOE's Telephone, DELONG's Telephone, EVANS' Telephone, and CASSIDY's Telephone, gathered from cell site/sector location, GPS location, or other means, can yield evidence that is relevant and material to an ongoing criminal investigation of the specified offenses. Such information includes leads relating to: (1) the

geographic breadth of the suspected drug trafficking cell, (2) the transportation routes and means for trafficking narcotics and drug proceeds from one geographic area to another, (3) other geographic locations where a drug organization may be engaging in similar conduct, (4) the geographic location of "stash" houses, and (5) the geographic locations where meetings are held to exchange narcotics and money. Further, the geographic location of SIMCOE's Telephone, DELONG's Telephone, EVANS' Telephone, and CASSIDY's Telephone can be used to corroborate the observations of surveillance agents. Surveillance agents can compare observations of the user of SIMCOE's Telephone, DELONG's Telephone, EVANS' Telephone, and CASSIDY's Telephone with geographic information in order to verify the identification and location of the user of SIMCOE's Telephone, DELONG's Telephone, EVANS' Telephone, and CASSIDY's Telephone.

32. In light of the nature of this affidavit and in order to keep from compromising the on-going nature of this investigation, I request that it be sealed and that service of the order granting authorization for tracking of SIMCOE's Telephone, DELONG's Telephone, EVANS' Telephone, and CASSIDY's Telephone be delayed for 30 days following termination of the period of tracking.

Further your affiant sayeth naught.

_____
Jason R. Carter
Task Force Officer
Drug Enforcement Administration

Subscribed and Sworn to me, this 15th day of August 2017, in the Western District of Missouri.

_____
Honorable David P. Rush
United States Magistrate Judge
Western District of Missouri